# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.C.-1 and K.C.**

**No. 21-1042** (Randolph County 20-JA-105 and 20-JA-106)

## MEMORANDUM DECISION

Petitioner Father J.C.-2, by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's December 3, 2021, order terminating his parental rights to J.C.-1 and K.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Andrew T. Waight, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying him an improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition against petitioner in August of 2020. Relevant to the instant case, petitioner and the children were the subject of a family court proceeding, during which Child Protective Services ("CPS") became involved. For reasons not

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.C.-1 and J.C.-2, respectively, throughout this memorandum decision. Finally, because two of the children share the same initials, we will refer to those children as M.C.-1 and M.C.-2, respectively, throughout this memorandum decision. Although M.C.-1 and M.C.-2 were initially listed in the style of the case, they are not at issue on appeal and, accordingly, their names have been removed.

apparent from the petition, petitioner's two stepchildren M.C.-1 and M.C.-2, who are not at issue on appeal, were placed or left with their paternal grandparents, and the grandparents became unable to properly care for the children due to the grandparents' age and medical conditions. In September of 2019, the DHHR received a referral that M.C.-1 and M.C.-2 were frequently observed to be unkempt and dirty and that a mass or knot had been allowed to form in M.C.-2's hair to such a degree as to cause the child pain. CPS workers investigated the referral and observed the mass in the child's hair, which appeared to have been glue or slime that solidified into a hard knot.

The investigation into M.C.-1 and M.C.-2 prompted a CPS worker to visit petitioner's home unannounced, and she observed the home to be in deplorable condition, with trash strewn throughout the home and a roach infestation. Further, petitioner owned eleven cats and one dog, and the smell of animal urine was overwhelming. The mother admitted to the CPS worker that the two younger children she shared with petitioner, J.C. and K.C., were living in the home and that, although not currently present, they would return with petitioner later that evening. Based on the conditions of the home, the worker sought ratification to remove the children. Later, the worker discovered that, at some point, K.C. had been taken to her maternal grandparents' home in Ohio, which was concerning given that the maternal grandparents' parental rights to their three children, including the mother, had been previously terminated.

Lastly, the DHHR alleged that petitioner had an extensive history of CPS involvement. Specifically, the DHHR alleged that a child abuse and neglect petition was filed against petitioner in 2000 regarding an older child after he shook her, engaged in domestic violence with her, and abused alcohol, and the DHHR further noted that petitioner had previously been adjudicated as an abusing parent prior to 2000 for reasons not apparent from the petition. In the 2000 proceedings, petitioner was adjudicated as an abusing parent and his parental rights to his older children were eventually terminated.[2] Another petition was filed against petitioner in 2007 regarding a subsequent born child as a result of his prior terminations and inadequate home conditions. Petitioner was adjudicated as an abusing parent in those proceedings, and the child was returned to his care following his successful completion of an improvement period. Yet another petition was filed against petitioner in 2010 alleging that petitioner's home was unsafe and unsanitary. Petitioner was adjudicated as an abusing parent in those proceedings and, eventually, his parental rights to his two children were terminated. Another petition was filed against petitioner in 2012, following the birth of child K.C. It is unclear whether petitioner was adjudicated in those proceedings but, ultimately, the child was returned to his care. Accordingly, the DHHR alleged that aggravated circumstances existed due to the termination of petitioner's parental rights to four older children.

Petitioner waived his preliminary hearing. In January of 2021, petitioner underwent a parental fitness examination. The evaluating psychologist gave petitioner a guarded prognosis for attaining minimally adequate parenting and indicated that petitioner currently lacked the parental capacity to care, protect, and change in order to provide adequately for the children at that time. The psychologist opined that petitioner "has deficits in understanding appropriate parenting techniques" but that petitioner claimed to not need further parenting instruction due to having

---

[2]Although unclear, it appears that petitioner's parental rights to two older children were terminated.

already received the same in prior proceedings. The psychologist further indicated that petitioner believed he had no parenting issues that needed addressed and did not believe he had significant problems with alcohol or substance abuse.

In February of 2021, the DHHR filed an amended petition against petitioner after the children underwent Child Advocacy Center ("CAC") interviews. According to the DHHR, K.C., then approximately age eight, reported being sexually abused by her maternal grandfather while in Ohio. The child further reported that she and J.C.-1 lived with her parents and that her parents abuse marijuana, described the pipe they used to smoke the substance, and stated that her parents kept loaded firearms within their reach in the home. During his interview, J.C.-1, then approximately age seven, denied any sexual abuse or drug abuse in the home, but admitted that petitioner frequently yelled at the child's uncle. Following the CAC interviews, K.C. reported to her foster family that petitioner also sexually abused her, and J.C.-1 reported to his foster family that he lied and had not told the truth. As such, additional interviews were scheduled. The DHHR also alleged that, after supervised visits with the parents, J.C.-1 and K.C. exhibited concerning behavioral issues. J.C.-1 urinated on the bathroom floor and in a cup, both children defecated in their pants, both children threw toilet paper with feces on the floor, and K.C. destroyed makeup and wrote on the foster family's couch with a marker, among other behaviors.

The circuit court held an adjudicatory hearing in April of 2021. A CPS worker testified regarding her investigation into petitioner's home and indicated that the home was in deplorable condition. The worker stated that trash was piled throughout the home with a small walkway to pass through and that trash covered the children's beds, except for a single mattress on the floor. The worker testified that there were at least eleven cats in the home and that there was a very strong odor of spoiled trash and cat urine. Further, bugs were observed throughout the home and roaches were found in the kitchen. The worker testified that, upon attempting to remove the children from petitioner's custody, she had to travel to Ohio to retrieve K.C. and reported that the maternal grandparents were inappropriate persons to supervise the child as their parental rights to their children had previously been terminated. The worker confirmed that K.C. and J.C.-1 lived in the home with petitioner and the mother. Lastly, the worker testified regarding petitioner's prior child abuse and neglect proceedings, which raised allegations of poor home conditions and alcohol abuse. The DHHR admitted pictures of the home and orders from petitioner's prior abuse and neglect proceedings into evidence. At the conclusion of the hearing, the circuit court held petitioner's adjudication in abeyance so that it could review the CAC interviews.

At the reconvened adjudicatory hearing held in September of 2021, the circuit court adjudicated petitioner as an abusing parent. The court found that petitioner maintained sub-standard living conditions that endangered the health, safety, and welfare of the children; used drugs in front of the children; had previously been adjudicated during prior proceedings as an abusing parent for the same poor home conditions at issue in this case; and that his parental rights to his older children had been terminated for his failure to remedy those conditions.

In November of 2021, the circuit court held a dispositional hearing. Petitioner moved the court for an improvement period and testified that he had been granted an improvement period during two prior cases and that he had successfully completed the same. Petitioner indicated that he was willing to comply with an improvement period and had taken steps to improve the condition

of the home, including fixing the flooring and generally cleaning the home. However, on cross-examination, petitioner was asked what he needed to improve upon during an improvement period and he responded, "I don't know." Petitioner also denied abusing and neglecting the children in the instant proceedings and minimized the bases for the prior petitions filed against him, claiming that they were due to alcohol abuse and did not involve poor home conditions.

The DHHR presented the testimony of the executive director for North Central Community Corrections. The director testified that petitioner was enrolled in a drug testing program in September of 2020 and that the last time petitioner "checked in" with the program was in October of 2020.

Following testimony, the circuit court found that petitioner had been the subject of six abuse and neglect proceedings, all with similar allegations, and that his parental rights had been terminated on two different occasions. The court found that petitioner denied any parenting deficits and was adamant that he had done nothing wrong. The court also noted that petitioner had not participated in drug screens. Given that petitioner had repeatedly been involved in abuse and neglect proceedings, that his parental rights to older children had been terminated on two occasions, and that he failed to participate in the instant case, the court found there was no indication that petitioner would participate in an improvement period or take steps to remedy the conditions of abuse and neglect. Accordingly, the court denied petitioner's motion for an improvement period and terminated his parental rights upon finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's December 3, 2021, order terminating his parental rights to J.C.-1 and K.C.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]The mother's parental rights to the children were terminated below. The permanency plan for the children is adoption in their foster home.

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. According to petitioner, the DHHR failed to present sufficient evidence to determine that the children were exposed to poor home conditions such that they were abused and neglected. Petitioner admits that there was testimony of clutter and trash in the home but that such conditions did not rise to the level of abuse and neglect, particularly when there were working utilities and food in the home. Moreover, petitioner claims that the DHHR failed to establish how long the family lived in that home or that the children were residing in the home at the time of the petition's filing. Lastly, petitioner claims that the DHHR "did not sufficiently prove the issues involving aggravated circumstances" as testimony established that petitioner had twice remedied the conditions of abuse and neglect in prior cases and had his children returned to his care.

We find petitioner's arguments to be without merit. This Court has held that

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

Contrary to petitioner's argument, we find that the DHHR presented sufficient evidence upon which to adjudicate petitioner as an abusing parent. While petitioner claims the testimony simply demonstrated that the home contained a little clutter and trash, the CPS worker testified to a significant amount of clutter and trash, roach infestation, and a strong odor of cat urine. Importantly, petitioner had already been adjudicated as an abusing parent on prior occasions based upon poor home conditions. Although petitioner correctly points out that he successfully completed an improvement period on two prior occasions, his parental rights to older children were terminated two other times for circumstances similar to the instant case. Moreover, while the most recent proceeding prior to the instant case resulted in the return of the children to petitioner's care, he clearly reverted to his prior abusive and/or neglectful behavior, resulting in the instant petition. The DHHR admitted pictures of the home's conditions, as well as orders from petitioner's prior proceedings to support its allegations and to demonstrate that petitioner had not, as he argues on appeal, made any meaningful or lasting changes to his behavior. Lastly, the DHHR presented sufficient evidence that the children lived in the home at the time of the petition's filing. Although neither child was present in the home at the CPS worker's unannounced visit, the mother informed the worker that both children lived in the home but that K.C. was visiting her grandparents in Ohio and J.C.-1 was temporarily out of the home with petitioner for the day. This statement is consistent with K.C.'s CAC interview, wherein she indicated that she and J.C.-1 lived in the home with

petitioner and their mother. Based on the foregoing, we find that the circuit court did not err in adjudicating petitioner as an abusing parent when sufficient evidence existed to support such a determination.

Petitioner next argues that the circuit court erred in denying him an improvement period when he demonstrated that he would comply with and successfully complete the same. Petitioner points out that he had previously successfully completed improvement periods during prior proceedings. He further notes that he testified that he would comply with the terms and conditions of an improvement period, that he had taken steps to remedy the conditions of the home, that he had completed his parental fitness examination, and that he was financially able to support the children. As such, petitioner argues that he was entitled to an improvement period prior to the termination of his parental rights.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). The circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

In support of his argument, petitioner cites to *In re S.J., A.J.-1, and A.J.-2*, No. 18-0243, 2018 WL 6119793 (W. Va. Nov. 21, 2018)(memorandum decision); however, this case does not support petitioner's claim that the circuit court erred in failing to grant him a post-adjudicatory improvement period. In *In re S.J.*, a circuit court found that a mother failed to accept responsibility for abusing and neglecting her children and denied her motion for an improvement period. *Id.* at *2. However, the record in those proceedings did not support the circuit court's findings. In *In re S.J.*, the DHHR worker who testified during the proceedings admitted she was unprepared to testify, did not prepare the mother's case plans, and had not even read the circuit court's adjudicatory order. *Id.* at *2. There are no such extenuating factors in these proceedings. In *In re S.J.*, this Court also found that the record demonstrated that the mother accepted full responsibility for her abuse and neglect. *Id.* at *4. Here, the record clearly demonstrates that petitioner refuses to accept full responsibility for his abuse and neglect of the children by repeatedly denying the allegations in the petition, despite the circuit court's findings in support of the same. Therefore,

6

the facts underlying the *In re S.J.* decision are wholly distinguishable from the facts in the case at bar.

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. As noted above, the circuit court found that petitioner failed to accept responsibility for his actions and denied that he had any parenting deficits upon which to improve. Specifically, petitioner denied abusing and neglecting the children, minimized the bases for the prior petitions filed against him, and claimed during his parental fitness evaluation that he needed no further parenting classes as he had already taken them during prior proceedings. While petitioner argues that he complied with services during prior proceedings, the record establishes that this is petitioner's sixth CPS case and that he was provided improvement periods with extensive services on many prior occasions yet regressed to his abusive behavior after the conclusion of each proceeding. Moreover, petitioner was given the opportunity to demonstrate his likelihood to comply with services through drug screens but failed to submit to any screens for thirteen months during the proceedings. Therefore, we find that the circuit court did not abuse its discretion in denying petitioner an improvement period.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. As noted above, petitioner was provided an improvement period in many of his prior cases, with services such as parenting and adult life skills classes, but reverted to his abusive behavior at the conclusion of each of the proceedings, resulting in the instant case—petitioner's sixth abuse and neglect proceeding. During the proceedings below, petitioner denied the allegations of abuse, claimed he did not know what parenting deficits he could improve upon, and refused to submit to drug screens. The circuit court found that, given petitioner's numerous prior proceedings, coupled with his failure to accept responsibility for his actions and his failure to submit to drug screens, there was no reasonable likelihood that petitioner would correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. We agree, and these findings are sufficient to support the termination of petitioner's parental rights. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence as set forth above, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 3, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn